Curia, per

Butler, J.
I shall regard this case here, as it was regarded on the Circuit. As a contest between the plaintiff and the heirs of Moore. The grant under which the defendant’s claim, can avail them nothing, except as color of title, to indicate the extent of their possesion. For it could have availed them nothing, during the life time of Lowndes, as the land ivas at his death, in the actual possession of no one; and after his death, while the title was in the State by escheat, it was not the subject qf grant. At Lowndes’s death, the title being in the State, as was established by the proceedings in escheat; the statute of limitations could not run against the State, in favor of Moore or *89 any one else. It may be assumed, as it is stated in the foregoing proceedings, that Edward Lowndes died in 1790. At that time, then, the right to the land, reverted to and was vested in the State, .and was subject to be sold under the Act of 1787, or to be disposed of, by any specific legislative enactment. By an Act of Assembly, passed in 1799, the escheated lands in Kershaw district, to the amount in value of $9000, were vested in the Camden Orphan Society, which, as a corporate body, had power to sue for these lands, as fully as any natural person would have had, under a general grant.. The plaintiffs having thus acquired this right, under a special Act of legislation, must be governed by the same legal principles, that would operate on other proprietors.
These general propositions are fully sustained by repeated decisions of our own State. The case of Wilkins vs. Tart, 2 McC. establishes the point, that the statute of limitations, will run against the trustees of an Academy, who had vested in them the title of escheated lands, by a special Act of the Legislature. Not from the time of inquisition and office found, but from the time the title was cast upon, or was acquired by the trustees.
Moore, by his tenant, Lockhart, took possession of the land, in controversy, in 1815, and held it adversely, till 1821, without question. This was a period of six years, and by the operation of the statute, he acquired a perfect title, to the exclusion, of all the world. The question then presents itself; has he been divested of that title, by the adverse possession of plaintiffs, after that time. From 1821, it is contended, that the plaintiffs were in, by the possession of Lockhart, as their tenant. Whether Lock-hart continued to be the tenant of Moore, or had become, and was the tenant of plaintiffs, after that period, was a* question of fact, that was submitted to the jury, on the evidence. It does appear, that in 1821, Lockhart entered into an obligation to pay rent to plaintiffs. Whether he ever paid the rent for that year, or acknowledged his liability to pay it afterwards, did not appear. I think, the evidence well warranted the conclusion, that after that year he continued to hold for Moore. For, in 1826, Lockhart actually bargained in the *90 name of Moore, part of the land to Porter, who is now in possession, under Moore’s title. But I hold it out of the question, that the plaintiffs could have availed themselves of Lockhart’s possession, to defeat Moore’s title, unless it could have been shown, that Lockhart had assumed an open and hostile attitude to his original landlord. Having entered under Moore, he could not dispute his title, by at-torning, secretly, to a stranger. The law will not allow the rights of a landlord to be prejudiced by the treacherous conduct of his tenant. Before a tenant can claim against his landlord, he must give him open notice, directly, or by some decisive act, that the tenant is holding in his own right, or in that part of another. No such' notice was, given to Moore. On the contrary, he had every reason to believe, that Lockhart was always holding in his right. Moore was not even made a party to any of the proceedings against Lockhart, and there was not the least evidence, that he knew of Lockhart’s having entered into any obligation to pay rent to plaintiffs. Upon this point we are well satisfied with the finding of the jury. The ground was taken, though, I think, not seriously insisted on, th at after the land was sold, under the proceedings of escheat, the title of all parties, having any claim to the same, was, thereby, and then, extinguished and barred. Upon reading the Act of 1787, it will be found, that these proceedings were conclusive, alone, on the representatives of Lowndes, and could not affect strangers to them.
Motion refused.
We concur. J. S. Richardson, John Belton O’Neall, B, J. Earle, Josiah J. Evans.